WEINFURTHER, Respondent, vs. PRINCL and another, Appellants.

*November 16—December 15, 1948.*

For the appellants there was a brief by *Hougen, Brady & Murphy* of Manitowoc, and oral argument by *Frank A. Murphy.*

For the respondent there was a brief by *John R. Cashman,* attorney, and *Emmert & Croy* of counsel, all of Manitowoc, and oral argument by *Mr. Dudley O. Emmert* and *Mr. Cashman.*

FRITZ, J.    The collision involved herein occurred on January 8, 1947, at 11:30 a.m. on arterial Highway 147, which extends east and west at a "T" intersection with a town road extending southward.    The traveled portion of the arterial highway is black-top twenty-one to twenty-two feet wide with graveled shoulders.    The traveled portion of the town road is

eighteen feet wide and it ends at the intersection. The weather was clear. At and near the intersection both roads were covered with ice and were very slippery. Plaintiff, traveling north on the town road, had stopped his car six feet south of the arterial at a stop sign for traffic entering the intersection from the south. From that point there was a clear and unobstructed view to the east along the arterial for at least thirteen hundred feet and plaintiff testified that while at the stop sign he looked to the east as far as a bridge, which was six hundred thirty feet away, and saw no vehicle. At the intersection, plaintiff looked to the west, then to the east, then to the west again, and, not noticing any traffic, he started up and entered the intersection. When he had turned his car to the northwest at an angle of about forty-five degrees he saw for the first time Princl's vehicle traveling westward on the arterial three hundred to three hundred fifty feet from plaintiff to his right. Princl was driving a large tractor and semi-trailer which with the trailer load weighed approximately forty thousand pounds. As plaintiff was proceeding westward on the north half of the arterial, Princl's tractor struck the rear of plaintiff's car when it was between the center of the intersection and a guard post, which was at the north edge of the north shoulder of the arterial and eighty feet west of the intersection of the center lines of the highways. The tractor shoved plaintiff's car at forty-five degrees across the road and the right rear fender of his car collided with that post. When defendant brought his tractor to a stop on the roadway of the arterial it was east of that post, about seventy-two feet west of the center of the intersection.

The jury found Princl was causally negligent in respect to speed, and control and management in operating his tractor; and that plaintiff was not negligent in respect to lookout, failing to stop for the arterial, control and management, and operating on the left half of the road. The jury assessed plaintiff's damages at $2,000 for personal injury; $291.41 for damages

to his automobile; $81 for medical expense; $250 for expense of hiring help and transportation. On that verdict the court entered judgment for plaintiff's recovery of $2,791.41.

On this appeal, defendants concede that, although there were conflicts in the evidence, it admitted of the jury's findings that plaintiff was not negligent in respect to failing to stop for the arterial, control and management, and operating on the left half of the roadway. But defendants contend that as to look-out plaintiff was negligent as a matter of law. Defendants base this contention upon plaintiff's testimony that he did not see Princl's vehicle approaching from the east, although he looked to his right and left when he stopped at the stop sign, from which there was an unobstructed view of traffic coming from the east a distance of thirteen hundred feet; and his testimony that he saw defendant's vehicle for the first time when upon entering the intersection he turned his car to face north-westward and proceeded westward on the north half of the arterial.

Defendants' contention that plaintiff was negligent as a matter of law in respect to his "lookout" cannot be sustained in view of the testimony in relation to that issue by plaintiff, which the jury could consider credible, to the following effect: That while halting at the stop sign plaintiff looked to the east as far as a bridge, which was six hundred thirty feet away, and saw no vehicle, and upon looking west and east and west again at the intersection and not noticing any traffic, he started up and entered the intersection and upon doing that and turning his car northwestward he saw Princl's tractor between three hundred and three hundred fifty feet away from the plaintiff, to his right; that as the roadway was icy and slippery, upon starting his car from a standing position it moved along at only two to three miles per hour and the wheels began to slip and then skid as he started up an incline; and that when he had proceeded northwestward in the intersection and was on his right-hand side of the arterial between sixty and eighty feet

his car was struck by Princl's tractor, which defendant had continued driving westward on the arterial at thirty-five miles per hour until it was twenty feet east of the intersection. Under those circumstances, the fact that plaintiff had not seen defendant's tractor when it was six hundred thirty feet away does not necessarily defeat his right to recover. If, as the jury could find under plaintiff's testimony, he had properly made and completed his turn in the intersection and proceeded westward about sixty feet and was then on his right side of the highway, with the south half thereof open for the passage of defendant's vehicle, the jury's finding that there was no causal negligence as to lookout on plaintiff's part was warranted and the court did not err in sustaining the verdict in that respect.

Defendants also contend that the jury's assessment of $2,000 as plaintiff's damages for his personal injury is excessive. As a result of the collision the front seat of his car was broken off and he fell backward and sustained a severe back and neck strain, which caused intense pain. After the accident, he drove his car one and three-tenths miles to Mishicot, where he resided, and also drove back to the scene of the accident and three miles more on his mail route, and then he consulted Dr. Rau at Manitowoc. Dr. Rau found plaintiff had sustained shock and severe strain of the neck and back, causing pain, but there was no fracture or dislocation. Dr. Rau applied diathermy and prescribed rest and heat treatments and eventually prescribed a belt for the lower part of the spine. The belt relieved the pain, but caused some discomfort from constant wearing. Dr. Rau discharged plaintiff seven weeks after the accident because further treatment was not required and he felt that in four to five weeks plaintiff would be fully recovered. Plaintiff testified that he had steady pain in the back and neck for two months after the accident. It is possible that such pain can recur and will recur due to a sudden jar or misstep by plaintiff, and the injury sustained could have aggravated and hastened an existing slight arthritic condition. For six days

after the collision plaintiff hired a substitute mailman and for another forty-eight days he hired a car and driver to take him on the daily mail route, but he was unable to do any lifting of mail sacks or other work. Thereafter he resumed his regular route himself.

Under the facts thus established by undisputed testimony, it is evident that the jury's assessment of $2,000 for plaintiff's personal injury was so excessive that the recovery of that amount cannot be sustained. Instead, the jury's finding as to that amount should have been set aside by the trial court and a new trial ordered in relation to solely that issue unless plaintiff elected to consent to accept an award of $1,000 as the lowest amount at which a jury could properly assess his damages for personal injury. As there is no occasion for a reversal and retrial in relation to any other determination upon which the provisions of the judgment are based, it should be affirmed in those respects but the cause remanded with directions to set aside the jury's finding as to the amount of plaintiff's damages for his personal injury and to grant a new trial in solely that respect unless plaintiff elects, within a period prescribed by the trial court, to accept an award of the above-stated sum of $1,000 for his personal injury. In that event judgment shall be entered accordingly.

*By the Court.*—The provisions of the judgment are affirmed excepting as to provisions for plaintiff's recovery of $2,000 for personal injury; and in relation to the item for such damages, the cause is remanded with directions for further proceedings in accordance with the opinion.